GUIDRY, Judge.
Plaintiff instituted this suit to recover damages for personal injuries and property damage he sustained as a result of an automobile accident which occurred in Sabine Parish on September 5, 1975. The accident happened when the car plaintiff was driving was rear ended by an automobile driven by Donna Saveli and owned by Lester Sa-veli, her father-in-law. Made defendants are Travelers Insurance Company (hereinafter referred to as “Travelers”), insurer of Lester Saveli’s vehicle and Allstate Insurance Company,' insurer of a vehicle owned by Donna Saveli and her husband. The trial court awarded judgment in favor of plaintiff and against Travelers in the amount of $3,068.32. The trial court dismissed plaintiff’s suit against Allstate Insurance Company.[1] Plaintiff appeals asking for an increase in the award of damages.
As neither Travelers nor Allstate have appealed or answered the appeal of plaintiff the sole issue before this court is the correctness of the trial court’s award of damages.
A review of the facts surrounding the accident show that plaintiff was, just prior to the accident, proceeding in' an easterly direction on Louisiana Highway 6, west of Many. Plaintiff at this time noticed a construction site ahead where several cars *1176 were parked on either side of the highway. As plaintiff approached the site he gradually slowed down and later stopped in order to allow a turning vehicle to pull onto the highway shoulder. Donna Saveli, who was also proceeding in an easterly direction on Highway 6, was following directly behind plaintiff. She likewise slowed down, however she failed to come to a complete stop. The car Donna Saveli was driving collided with the rear of plaintiff’s car. At the time of the accident it was approximately 5:30 p. m. and there was a light rain.
The investigating officer who testified, James Napier of the State Police, indicated in his report that the damage to plaintiff’s vehicle was light. Plaintiff’s Exhibit P-7 reveals that the property damage to plaintiff’s car amounted to $120.22. The state trooper testified that there were no observable injuries to any of the parties involved in the accident.
Plaintiff, who at the time of the accident was accompanied by his two young sons, was traveling to a Many High School football game. Plaintiff performed janitorial services at the high school and also helped out during the ball games. The testimony of plaintiff reflects that following the accident he with his two sons proceeded on to the game where they remained until it was over. It was admitted by plaintiff that neither one of his sons sustained any injuries in the accident.
On the following day, Saturday, September 6,1975 plaintiff with complaints of pain in his right arm went to the Many Clinic for x-rays. Although the bill for these services appears in the record no medical evidence was presented in this regard.
On September 7, 1975 plaintiff consulted Dr. J. Lane Sauls in Deridder who admitted plaintiff to the hospital for a complete physical examination. Dr. Sauls, a general practitioner,' had been the plaintiff’s family physician for some fifteen years. Dr. Sauls’ examination of the plaintiff, a 48 year old male, was relative to his complaints of severe headaches, nausea, dizziness, backache and pain in the right elbow. Plaintiff remained in the hospital for four days.
A complete physical examination of plaintiff revealed no abnormality, although the physician instituted treatment for a mild concussion. . The physical examination showed only minimal bruising about the plaintiff’s head. X-rays showed a spur on the tip of plaintiff’s elbow, however, Dr. Sauls stated that this condition was degenerative in nature and not necessarily related to the automobile accident. X-rays of the lumbar spine revealed a fusion of the lumbosacral joint with a moderate narrowing of the interspace at the third lumbar. A past medical history of plaintiff showed that he had had a lumbosacral arthrodesis in 1964 which later developed symptoms of herniation in 1969.
Plaintiff again saw Dr. Sauls on September 18, 1975 with continued complaints of headaches and nervousness. Dr. Sauls prescribed medication for plaintiff.
A third examination of plaintiff by Dr. Sauls on September 25, 1975 showed some improvement. Plaintiff complained only of light headaches. Plaintiff, again seen by Dr. Sauls on October 9, 1975, was still improving. An examination on October 25th revealed that plaintiff had only occasional headaches, however he complained of back pain and stiffness in the neck. At this time plaintiff was treated with physiotherapy. On November 6, 1975, Dr. Sauls finding that plaintiff had recovered from his injuries, discharged him. Dr. Sauls testified that at this time his findings and the x-rays did not indicate any specific or definitive damage to plaintiff’s back. The doctor concluded that plaintiff had muscle soreness of a mild to moderate nature. Dr. Sauls suggested to plaintiff that if he had continued problems with his back to consult Dr. Edwin Simonton Jr. Dr. Simonton was an orthopedic specialist who had performed the lumbar fusion on plaintiff in 1964.
On January 9, 1976 plaintiff was examined by Dr. Edwin Simonton Jr., relative to his complaints of back and shoulder pain. X-rays taken by Dr. Simonton showed no evidence that plaintiff’s right shoulder was either fractured or dislocated. A view of the x-ray of the lumbar spine confirmed a *1177 solid union of the arthodesis of the lumbo-sacral joint. There was some narrowing of the third lumbar interspace. Dr. Simonton was of the opinion that plaintiff had some mild degenerative change above the fusion which had been aggravated by the trauma of the accident. The doctor stated that the narrowing of the interspace was not a result of the accident, but rather due to the lumbar fusion performed in 1964. Dr. Si-monton could not give the extent of the aggravation except as it related to the complaints of pain experienced by the plaintiff. In regards to plaintiff’s shoulder complaints the physician determined that it was probably a pinched tendon.
The second examination by Dr. Simonton on March 15, 1976 revealed that the plaintiff was improved, but still had some complaints of back pain during physical activity. The doctor found evidence of mild muscle spasms and stiffness with motion in the lumbar area. Plaintiff thereafter started wearing a back support.
Dr. Simonton last examined the plaintiff on April 30, 1976. Plaintiff repeated his complaints of back pain, although much less severe with the use of the back support. Plaintiff also complained of neck pain. Examination revealed tenderness in the neck area and x-rays showed some narrowing of the 4th cervical interspace. Dr. Simonton unequivocally stated that these problems in the cervical area were not caused by the accident.
In reviewing the trial court’s award of $3,068.32 in damages we are guided by the well established rule that the trial court is granted great discretion in assessing the quantum of damages, and in the absence of manifest error or gross abuse of discretion, such award should not be disturbed.[2] Anderson v. Welding Testing Laboratory, Inc., 304 So.2d 351 (La.1974).
The trial court did not render written reasons in this matter however, our review of the record establishes that the plaintiff as a result of this minor automobile accident did sustain a mild concussion and an aggravation of a degenerative lumbar condition. Further examination of the evidence shows that plaintiff’s complaints of headaches gradually disappeared and he was discharged from his physician’s care two months after the accident, although at this time he had complaints of back pain. Dr. Sauls, who found that plaintiff had recovered from his injuries, could not find any definitive damage to plaintiff’s back. The orthopedic surgeon, Dr. Simonton, who examined plaintiff subsequent to his discharge by Dr. Saul, found that there was aggravation of the degenerative lumbar condition, but stated that he could not give the extent of the aggravation except as it related to plaintiff’s complaints of pain.
Considering these facts we find that the trial court’s award of $3,068.32 is somewhat low, especially in light of the plaintiff’s continuing complaints of pain. However, the trial court must have been impressed by the fact that the medical evidence shows that plaintiff continued to be treated relative only to his subjective complaints of pain. Furthermore the record shows that plaintiff continued to perform the arduous tasks required of him as a janitor at the Many High School. In this regard the evidence reveals that following the accident plaintiff claimed 10 days of the 25 days sick leave he had accumulated, thereafter returning to his normal duties at the school.
The trial court award is somewhat low, however, under the evidence as outlined, it is not so inadequate as to constitute manifest error or a gross abuse of discretion. We therefore will not disturb this award. See Green v. Clark, 306 So.2d 396 (La.App. 4th Cir. 1975); Kennedy v. Insurance Company of North America, 276 So.2d 812 (La. App. 3rd Cir. 1973).
For the above and foregoing reasons the judgment appealed from is affirmed. All costs of these proceedings are to borne by the plaintiff-appellant.
AFFIRMED.

. Travelers admits that it is the primary insurer and that Allstate Insurance Company would only be liable to plaintiff for such amount of the judgment in excess of the applicable liability limits of the Travelers’ policy, i. e., $10,-000.00.

. We observe that the record in this matter indicates that the trial court awarded plaintiff $2,000.00 in general damages and in addition $1,068.32 in special damages. This latter figure including $120.22 in property damage.